M. M. STONE & CO. *vs.* THE POSTAL–TELEGRAPH CO.

JULY 13, 1910.

PRESENT: Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1)    *Telegraph Companies. Rules Limiting Time to File Claims.*

The addressee of a telegram sent in reply to a communication from him requesting a reply by telegraph, and addressed to him at a point within this State from a point outside the State, is barred from maintaining a tort action for loss arising from negligent delay occurring in this State in the delivery of

such telegram, by reason of his failure to file written notice of his claim within sixty days from the date the telegram was filed with the company for transmission, where there is a rule, printed on the back of the blank on which the message delivered to him was written, requiring a claim for damages to be presented in writing within sixty days, and where the addressee had knowledge of the delay in ample season to have filed the claim, such rule being a reasonable one.

The rights of the addressee are based upon and limited by the terms of the contract for transmission.

(2)  *Knowledge of Rule by Addressee.*

The knowledge or ignorance of the addressee of such rule, before the delivery of the message to him, is immaterial in determining his right to recover.

(3)  *Rules Limiting Liability.*

A rule printed on the back of the blank forms furnished by a telegraph company to its customers, including those upon which the messages as delivered are written, limiting the liability of the company for mistakes and delay, in accordance with a graded compensation, is a reasonable regulation, and is a bar to recovery, beyond such amount, by the addressee of a message sent in reply to a communication from him requesting a reply by telegraph.   The rights of the addressee are limited by the reasonable provisions of the contract between the company and the sender, and the knowledge or ignorance, of the addressee, of this rule, before delivery of the message to him, is immaterial.

(4)  *Law of State Where Message Originates to Govern.*

Questions as to the validity and effect of such regulations in the contract, between the company and the sender, as concern the addressee's right to recover, are governed by the law of the State where the message originated.

Trespass on the Case for negligence.   Heard on questions of law certified from Superior Court.

Sweetland, J.   The case is here upon questions of law certified to this court from the Superior Court, under the provisions of cap. 298, § 5, Gen. Laws, 1909.   The action is one of trespass on the case for negligence, brought by the plaintiff against the defendant to recover damages for losses sustained by reason of the alleged negligent failure of the defendant to deliver, with reasonable promptness, certain telegrams addressed to the plaintiff.

The first question certified to us is as follows:

"Is the addressee of a telegram sent in reply to a communication from him requesting a reply by telegraph and addressed

to him at a point within this State from a point outside this State, barred from maintaining a tort action for loss arising from negligent delay occurring in this State in the delivery of such telegram by reason of failure to file written notice of his claim within sixty days from the date the telegram was filed with the Telegraph Company for transmission, where there is a rule or regulation printed on the back of all blank forms furnished by said Telegraph Company to its customers, including the blank on which the message delivered to him was written, providing that the 'company will not be liable for damages or statutory penalties in any case where the claim is not presented in writing within sixty days after the message is filed with the company for transmission,' and where the addressee has knowledge of the delay in ample season to file a claim in writing with the telegraph company before the expiration of the sixty days?''

This regulation, printed on the back of the blank forms and quoted in the question, in the circumstances of the defendant's business, is a reasonable one. The argument of the defendant's counsel in that regard appears to the court to be sound. The number of messages received by a telegraph company daily for transmission is so great, particularly in the large cities, that it is impracticable to keep them on file for a long time, so as to have them accessible for examination in case of a complaint regarding service. It is necessary for each office to destroy all original messages, after a brief period, to avoid encroachment upon its limited working space. Indeed, even if all messages were kept, it would soon become a difficult task to find a particular message after the lapse of many months. Furthermore, the production of the original message would not give full information about the service. Many of the facts are dependent upon the memory of operators, and other witnesses, and the passing of time quickly obscures evidence so founded. A rule that provides that if a customer intends to hold the company responsible for a fault in the service he must give it notice of his claim within a period sufficiently short to allow the facts to be investigated while fresh and capable of accurate knowl-

edge, is a reasonable rule.  Without it the company would suffer from the presentation of stale and fictitious claims, against which it would be unable to defend itself.

(1)  The plaintiff admits that, in suits by the sender against a telegraph company for delay in transmitting messages, the weight of authority supports the validity of such a provision as the one printed on the back of the blank form furnished by the defendant to the sender of the message, and incorporated in the question now before us.  The plaintiff contends, however, that the regulation has no application in this suit brought by the addressee of the message against the defendant; for as between the addressee and the company there was no contractual relation; that the receiver of the message had no notice of the printed condition until after the message was delivered to him, and therefore could not have agreed to this condition in advance. The plaintiff, however, did have notice of this condition and that it was a part of the contract, which was the basis of the whole transaction, as soon as the message was delivered to him.  He then had notice that the company would not be liable in damages in any case where the claim for damages was not presented to it, in writing, within sixty days after the company received the message for transmission.  This notice was given to him in as effective a manner as the company could, reasonably, be required to give it; a printed copy of the contract was attached to the message when it was delivered to the plaintiff.  Accordinging to the terms of the question certified to us, the plaintiff received this notice in ample season to enable him to file his written claim for damages within the sixty days prescribed.  It is quite immaterial that the plaintiff had no opportunity to agree to this condition before the message was sent.  It was a valid condition, which the defendant might impose upon the contract with the sender; and it was only upon this condition that the defendant would agree to transmit the message.  Any rights which the plaintiff may have are based upon and limited by the terms of the contract for transmission.  The claim of the plaintiff that he has rights in the matter independent of this contract has no basis in reason.  The defendant's duty in

the premises must be regulated by its contract; not only its duty to the sender but to this plaintiff. The American cases permit the plaintiff, as the receiver of the telegram, to come in and avail himself of the defendant's express and implied obligations arising under the contract; but the plaintiff's rights can be no greater than those of the party to the contract.

In *Russell* v. *Western Union Tel. Co.*, 57 Kan. 230, the court said:

"Just how a liability to perform that service can arise independently of any contract with the sender of the message we are unable to perceive. A telegraph company certainly is under no obligation to transmit messages except when employed by some person to do so. Perhaps, because of the public nature of its business, it may not refuse the employment nor impose unreasonable conditions for undertaking it; but can it be doubted that, whenever it receives a message for transmission, there is either an express or implied contract on its part that it will transmit and deliver it? . . . We are satisfied with the rule heretofore maintained by this court, and, under it, the liability of the defendant must be determined by the contract made with the sender of the message, of which contract the plaintiff was entitled to the benefit."

In *Frazier* v. *Western Union Tel. Co.*, 45 Oregon 414, the following language appears:

"The right of an addressee to recover is necessarily grounded upon the contract between the company and the sender, whether the action be in form technically for breach of contract, or one sounding in tort. Without the contract under which the message was forwarded as a foundation for the cause of action, no recovery whatever could be had."

In *Broom* v. *Western Union Tel. Co.* 71 S. C. 506, the court says:

"The sendee of a telegraphic message has no cause of action unless the defendant has breached some duty owing to him. The duty which a telegraph company owes by law to the sendee of a message is precisely the same duty which it owes to the sender, that is, to promptly transmit and deliver the message.

This duty springs from the relation created by the contract. The contract, to the extent that it is reasonable and not contrary to law, limits, qualifies, molds the duty which the law imposes upon the carrier in its relation to the public."

In *Findlay* v. *W. U. Tel. Co.* 64 Fed. 459, the court said:

"The plaintiff thus claims the benefit of this contract of transmission and avers that he has been damaged by a breach of it; claims the benefit of its obligations, makes himself a party to its provisions, placing himself in this relation to it and demanding a strict enforcement of his own rights under it. It cannot be successfully contended that he is exempt from the operation of certain provisions of the contract to be complied with on his part before he can successfully assert his rights to the benefits accruing under it, or a redress of wrongs growing out of its violation. The contract is an agreement between the sender and the telegraph company that, for a stipulated price, the company shall carry a message from the sender, and deliver the same to the receiver. It is the same contract when delivered to the receiver that it was when it came from the hands of the sender. He takes it with all the rights that accrued to the sender, and he assumes all the obligations that it imposes on the sender when he comes to assert his rights under it."

In answer to the first question certified we say that the plaintiff is barred from maintaining an action, of the nature set out in the question, by reason of his failure to comply with the rule or regulation quoted in the question, and said question is answered in the affirmative.

The second question is as follows:

(2)     "Is the addressee's knowledge or ignorance of such rule or regulation material in determining his right to recover?"

This question should be answered in the negative, if the question refers to a knowledge or ignorance of the rule before the message was delivered to the plaintiff. As we have said, *supra*, it is immaterial that the plaintiff did not have an opportunity to assent to this regulation before the message was sent. He must be presumed to have had knowledge of the regulation as soon as the message was delivered to him, and then for the

first time was there any reason for him to act upon such knowledge. The plaintiff knew of the rule, and he knew of the delay of which he complains, before the expiration of the sixty days after the message was received by the company from the sender, with ample time for him to have complied with the requirement.

(3)     The third question certified is as follows:

"Is a rule or regulation printed on the back of all blank forms furnished by a telegraph company to its customers, including those upon which the messages as delivered are written providing that,

"'To guard against mistakes or delays, the sender of a message should order it repeated; that is, telegraphed back to the originating office for comparison. For this one-half the regular rate is charged in addition: It is agreed between the sender of the message written on the face hereof and the Postal Telegraph-Cable Company, that said company shall not be liable for mistakes or delays in the transmission or delivery, or for non-delivery, of any unrepeated message, beyond the amount received for sending the same; nor for mistakes or delays in the transmission or delivery, or for non-delivery, of any repeated message beyond fifty times the sum received for sending the same, unless specially insured, nor in any case for delays arising from unavoidable interruption in the working of its lines, or for errors in cipher or obscure messages. And this company is hereby made the agent of the sender, without liability, to forward any message over the lines of any other company when necessary to reach its destination.

"'Correctness in the transmission of messages to any point on the lines of the company can be insured by contract in writing, stating agreed amount of risk, and payment of premium thereon, at the following rates, in addition to the usual charge for repeated messages, viz.: one per cent. for any distance not exceeding 1,000 miles and two per cent. for any greater distance,' a reasonable regulation and is it a bar in a tort action to recovery beyond such amount by the addressee of a message sent from a point outside this State to a point within this State

in reply to a communication from him requesting a reply by telegraph for a loss arising from a negligent delay, occurring in this State, in the delivery of such message?''

We are of the opinion that the regulation set out in this question is a reasonable one.  The provision seems primarily intended to limit the liability of the company for mistakes in transmission rather than for delay, though the rule includes a limitation of the company's liability for delay in transmission. The liability of the company under this agreement is graded in accordance with the compensation received for transmitting the message.  Correctness in transmission, which from a consideration of the whole rule appears to include promptness in delivery, may be insured by a contract and the payment of an additional fee.  All these provisions in the contract of sending appear to be reasonable, and within the right of the company to impose.  As is urged in the argument of the defendant's counsel, the sender is fully aware how important the prompt delivery of his message is; the message as delivered to the company ordinarily gives no indication of its importance.

If the sender desires to have special care expended upon it, it is not unreasonable to ask him to pay for such particular attention.  Some messages may be of trivial importance, others of great importance.  By negligence in the transmission or delivery of one message the damages incurred may amount to no more than the cost of sending the message.  In respect to another message the damages might amount to a large sum. These facts are unknown to the telegraph company, but they are within the knowledge of the sender.  In these circumstances, therefore, it is fair to allow the telegraph company to enter into some agreement with the sender for liquidating or ascertaining the damages which it may be called upon to pay, and grading its charges for the service in accordance therewith.

If the company is to be held to a very small liability, as for the bare amount of the tolls, it can afford to transmit the message for a very small sum; but if it may be held liable for large damages, it must, for its own protection, charge more for the service.

The situation is analogous to the case of a carrier entering into an agreement with the shipper as to the value of the goods shipped, and limiting the carrier's liability. This court has said, in *Ballou* v. *Earle*, 17 R. I. 441: "We have come to the conclusion that the decided weight of the authorities, as well as the better reason, favors the rule that a common carrier may, to a great extent at least, contract in limitation of his common law liability, ' provided,' as stated in *Express Company* v. *Caldwell*, 21 Wall. 264, 'the limitation be such as the law can recognize as reasonable and not inconsistent with sound public policy.'

"The shipper and the common carrier are thus authorized to enter into an express agreement within certain limits, as to the terms upon which the latter will transport and convey for the former a certain article of personal property of an agreed value to a designated place for an agreed price. We fail to see that the recognition of the validity of such an agreement is violative of any sound rule of public policy. Indeed it seems to us that the public policy requires the upholding of such an agreement as tending to the honest disclosure of value on the part of the shipper, and the exercise of that degree of diligence on the part of the carrier which is commensurate with the value of the particular article conveyed, and the price paid for such conveyance."

As we have already said in answer to the first question, the rights of the plaintiff are limited by the reasonable provisions of the contract between the company and the sender of the message. This question is answered in the affirmative.

The fourth question certified is as follows: " Is the addressee's knowledge or ignorance of such rule or regulation material in determining his right to recover?" This question is answered in the negative; and reference is made to the answer to the second question certified.

(4) The fifth question certified is as follows: " Are the validity and effect of the above mentioned rules or regulations, so far as concerns the addressee's right to recover in an action of tort for loss arising from negligent delay in delivery

of the message after reaching its terminal station, governed by the law of the State where the message originated or by the law of the State where it was delivered to the addressee?" The plaintiff's action, though in tort, can only be maintained because he is able to show the violation of some duty which the company owed to him, arising out of the contract between the company and the sender of the message. His action is founded upon and limited by that contract. We are of the opinion that the questions as to the validity and effect of these regulations in the contract, as concerns the plaintiff's right to recover, are governed by the law of the State where the message originated.

The questions having been severally answered as aforesaid, the papers in the cause, with our decision certified thereon, are remitted to the Superior Court for further proceedings.

*William J. Brown,* for plaintiff.

*Edwards & Angell, Carver, Wardner, and Goodwin, G. Philip Wardner, and Clifford H. Walker,* for defendant.